IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ESRIAL JASPER                                                                                        PLAINTIFF
ADC #098607

v.                                         4:22-cv-00829-LPR-JJV

DOES; *et al.*                                                                                       DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.   DISCUSSION**

Esrial Jasper ("Plaintiff") is a prisoner proceeding *pro se* in this civil rights action he filed pursuant to 42 U.S.C. § 1983. In his *pro se* Amended Complaint, Plaintiff alleges that from August 25 to September 21, 2021, Defendants Registered Nurse Nancy Miles, Nurse Shanda Glover, Nurse Crystal Williams, and Health Care Provider Lonnell Seamster failed to provide him with constitutionally adequate medical care for intestinal cancer as well as post-surgical complications.[1]  (Doc. 4.)

---

[1] On February 13, 2023, I issued a Partial Recommended Disposition suggesting his claims against the Doe Defendants be dismissed without prejudice due to a lack of service. (Doc. 22.)

Defendants have filed a Motion for Summary Judgment arguing the claims against them should be dismissed without prejudice because Plaintiff failed to properly exhaust his administrative remedies. (Docs. 25-27.) Plaintiff has not filed a Response, and the time to do so has passed. Thus, the facts in Defendants' Statement of Facts (Doc. 27) are deemed admitted. *See* Local Rule 56.1(c); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001). And, as will be discussed herein, those facts are supported by the record. After careful consideration and for the following reasons, I recommend the Motion be GRANTED, the claims against Defendants be DISMISSED without prejudice, and this case be CLOSED.

## II.   SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d

672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. ANALYSIS

#### A. The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

#### B. The ADC's Exhaustion Procedure

The ADC grievance policy in effect at the relevant time in this case was Administrative Directive 19-34. (Docs. 27-1 at 1-22.) This Directive establishes a three-step procedure. (*Id.*)

3

First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver "within 15 days after the occurrence of the incident. (*Id*. § IV(E)(1) (emphasis added.) The form must include a brief statement that is specific as to the substance of the issue or complaint to include the date, place, "personnel involved or witnesses," and how the policy or incident affected the inmate submitting the form. (*Id*. § IV(E)(2).) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process" may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties. (*Id*. § IV(C)(4).) And, the grievance form itself reminds prisoners to include the "name of personnel involved." (*Id.* at 20.) The problem solver must respond to the informal resolution within three working days. (*Id*. § IV(C)(4) and (7).)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance with Health Services Administrator ("HSA") on the same Unit Level Grievance Form within three working days. (*Id.* § IV(E)(11) and (F)(5) and (7)). The HSA must provide a written response to the formal grievance within twenty working days. (*Id*.)

Third, an inmate who is dissatisfied with the response or does not timely receive a response, must appeal within five working days to the ADC Assistant Director. (*Id*. § IV(F)(9) and (G).) The ADC Assistant Director must provide a written response within thirty working days. (*Id*. at IV(G)(6).) A decision or rejection of an appeal at this level is the end of the grievance process. (*Id*.) Finally, the Directives include the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim. If this is not done, the lawsuit or claim may be summarily dismissed.

(*Id*. at § IV(N).)

### C. Plaintiff's Grievances

The Medical Grievance Supervisor says in her sworn Declaration that prior to filing this lawsuit, Plaintiff filed only two grievances (TU-22-69 and TU-213) about the medical care claims raised in this lawsuit. (Doc. 27-1.) Plaintiff has not offered any contrary evidence.

On February 18, 2022, Plaintiff filed informal resolution TU-22-69, and on June 22, 2022 he filed informal resolution TU-22-213. (Doc. 27-1 at 24-30.) In both informal resolutions, Plaintiff said from August 25 to September 20, 2021, Defendants Glover and Miles refused to send him to the emergency room or otherwise provide him with adequate medical care for consistent vomiting, abdominal pain, weight loss, and low blood pressure that he experienced after cancer related intestinal surgery. (*Id*.) Plaintiff said these symptoms continued until September 21, 2021, when Defendant Seamster sent him to the emergency room where he received surgery for a ruptured and obstructed bowel. (*Id*.) ADC officials did not address the merits of either informal resolution because Plaintiff filed TU-22-26 five months and TU-22-213 eight months after the grieved medical care concluded in September of 2021 - instead of within fifteen days as required by the ADC's exhaustion policy. (*Id*.)

I agree with Defendants that these two grievances are not proper exhaustion for the following reasons. First, Plaintiff did not say in either TU-22-26 or TU-22-213 that Defendants Williams or Seamster did anything wrong, as he was clearly required to do by the ADC's exhaustion policy. Instead, Plaintiff did not mention Defendant Williams at all, and he said Defendant Seamster referred him to the emergency room as soon as he became aware of his symptoms. Thus, Plaintiff has not properly exhausted his administrative remedies against these two Defendants. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory

5

under the PLRA and that unexhausted claims cannot be brought in court"); *Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018) (no exhaustion when a prisoner's grievance did not contain "the specific factual allegations that would later appear in his federal complaint"); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (improper exhaustion when "the prison was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit).

In contrast, Plaintiff specifically named Defendants Miles and Glover in TU-22-69 and TU-213 and alleged they failed to provide him with adequate medical care in August and September 2021. But Plaintiff untimely filed those informal resolutions several <u>months</u> after the fifteen day deadline for doing so expired. *See Woodford*, 548 U.S. at 90 (proper exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Importantly, ADC officials did not by-pass that procedural error and address the merits of the inadequate medical care claims Plaintiff attempted to raise against Defendants Miles and Glover in those grievances. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits"). Thus, I conclude Plaintiff did not properly exhaust his administrative remedies against any of the Defendants.

**D.   Availability**

However, that is not the end of the analysis because the PLRA only requires prisoners to exhaust their "available" administrative remedies. 42 U.S.C. § 1997e(a). The United States Supreme Court has broadly construed administrative remedies to be "available" if they are "capable of use for the accomplishment of a purpose." *Ross v. Blake,* 578 U.S. 632, 642 (2016). And the Court has clarified administrative remedies are "unavailable" only if: (1) the grievance procedure "operates a dead end;" (2) the procedure is "so opaque that it becomes . . . incapable of

use;" or (2) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44; *see also Townsend*, 898 F.3d at 783.

In his appeal of TU-22-213, Plaintiff said he was late in filing his grievances because "I was too sick and weak physically and mentally during the 27 days, once I was sent back to UAMS I stayed for 10 days and then was quarantined for 13 days so I was beyond the 15 days."[2] (Doc. 27-1 at 28.) This argument might have had some weight if Plaintiff had filed an informal resolution in late October or early November 2021. However, it is undisputed he did not file any grievances challenging his August and September 2021 medical care until February 2022, which was long after he claimed he was too physically and mentally weak to do so. Plaintiff has not presented any evidence suggesting the ADC's grievance process was "opaque" or a "dead end," or that prison officials thwarted him from properly using that procedure. *See Ross,* 578 U.S. at 1857 (emphasizing there are no "judge-made exceptions," such as special circumstances or good cause, to the PLRA's proper exhaustion requirement). Thus, I conclude Defendants are entitled to summary judgment because Plaintiff failed to properly exhaust his available administrative remedies against them.

That being said, I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion

---

[2] This statement is confusing. In his Amended Complaint, Plaintiff says he was in UAMS from September 21 to 31, 2021 (which is 10 days) and returned to the Tucker Unit on October 1, 2021. (Doc. 4 at 8-9.) It does not mention Plaintiff being placed in quarantine for 13 days. But even if I construe that to be true, and that he was not able to file grievances while in quarantine (which is something Plaintiff does not clearly allege), that would still only be 23, not 27 days. Nevertheless, I will, for Plaintiff's benefit, presume he is saying he was mentally and physically weak for 27 days.

7

requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.  CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 25) be GRANTED; his inadequate medical care claims against Defendants Miles, Glover, Williams, and Seamster be DISMISSED without prejudice; and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 30th day of March 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE